HOOD, Judge.
Plaintiffs, Mr. and Mrs. C. W. Richardson, instituted this suit for damages for injuries sustained by Mrs. Richardson as the result of a motor vehicle collision. The sole remaining defendant at the time of the trial was United States Fidelity and Guaranty Company. The case was tried by jury and it resulted in a verdict for plaintiffs, the sum of $4,350.00 having been awarded to Mr. Richardson and $6,-000.00 having been awarded to Mrs. Richardson. Judgment was rendered by the trial court in accordance with that verdict.
Plaintiffs appealed demanding that the awards be increased, and defendant has answered the appeal praying that the amounts awarded be reduced. The sole issue presented, therefore, relates to quantum.
The accident occurred about 3:00 p. m. on March 7, 1966, at a street intersection in Alexandria, Louisiana. Mrs. Richardson, while driving her family car, stopped for a red traffic light at a street intersection, and waited for the light to change to green. Charles Ray DeVille, who was driving a pick-up truck, stopped behind Mrs. Richardson for the same purpose. Under the mistaken belief that the traffic signal had changed to green, DeVille started his truck forward and caused it to collide with the rear of the Richardson car. The collision was of a relatively minor nature, but plaintiffs contend that as a result of it Mrs. Richardson sustained serious injuries to her neck “as well as psychological involvement.” Defendant was the insurer of the DeVille pick-up truck at the time of the accident.
Mrs. Richardson testified that she drove her car to her home in Oakdale that afternoon, and that she experienced no pain “other than vomiting” for several hours after the accident occurred. She stated that the next morning she felt pain in her neck, between her shoulders and in the fingers of her right hand, and she thereupon consulted a physician. Her father was critically ill in Alexandria at that time, so she did not go to bed or rest, but instead she drove to Alexandria daily for the next few days to see and care for him. She consulted her family doctor, Dr. Walter Asseff, one week after the accident occurred, and she remained under his care and treatment from that time until the date of the trial, about one year later. She also was treated by Dr. C. W. Lowrey, an orthopedic surgeon, on three occasions. A myelogram was performed by a radiologist, and she was examined by a general practitioner, a neurologist, two specialists in internal medicine, two orthopedic surgeons *413 and a psychiatrist. The two treating physicians, the radiologist and four of the examining physicians testified at the trial.
Mrs. Richardson is 34 years of age. About 14 years before this accident occurred she was hospitalized for a condition described as “psychoneumatic reaction reactive depression,” and she was given electroshock treatments. After that time and before this accident occurred she had at least one other episode of depression, and one of the examining physicians observed that “she had probably always been either acutely or chronically anxious.” She was operating a beauty shop at the time the accident occurred, and she testified that because of the pain which she suffered from her injuries she was unable to operate her shop for a period of from four to six months. She stated that she is still suffering pain at the base of her skull, between her shoulders and in her right hand, and that she has been very nervous since the accident occurred.
Dr. Asseff, one of the treating physicians, diagnosed Mrs. Richardson’s injury as a “cervical muscle strain.” He found no objective signs of injury at any time, and he stated that an x-ray examination and the myelogram which was performed also were negative as to injury or disability. Although he diagnosed her injury as being only a cervical strain, he received a report from a neurosurgeon to whom Mrs. Richardson had been referred to the effect that she had a cervical disc injury, and Dr. Asseff thereupon deferred to the neurosurgeon and proceeded to treat her as though she had such an injury.
Dr. Lowrey treated her on three occasions, on March 14, April 28 and June .27, 1966. He, like Dr. Asseff, found no objective signs of injury, and he noted that the x-rays and myelogram were negative as to cervical abnormalities. He conceded that “there was a possibility of a disc,” but he stated that he could not make such a diagnosis on the basis of his findings. He concluded that Mrs. Richardson had sustained a “cervical strain” as a result of the accident.
Dr. Seymour Oschner, a radiologist, performed a cervical myelogram study on the injured plaintiff on July 19, 1966, and he concluded from that study that there was “no evidence of herniated disc or any other abnormality.”
Dr. Robert E. Ball, Jr., a specialist in internal medicine, and Dr. Daniel Kingsley, an orthopedist, each of whom examined Mrs. Richardson once, found no objective signs of injury or disability which could have been caused by trauma.
Plaintiffs rely largely on the opinions expressed by D'r. R. C. Llewellyn, a neurosurgeon, and by Dr. Charles Rodney Smith, a psychiatrist. Dr. Llewellyn examined Mrs. Richardson on June 13 and July 17, 1966, and on January 16, 1967, and he studied the reports of the myelogram which was made on July 19, 1966. He testified that in his opinion “the myelogram was not entirely normal,” that he found objective signs of injury, including muscle spasm of the muscles of the neck, and that he concluded that Mrs. Richardson had sustained a “cervical disc injury and cervical spine sprain.” He recommended that surgery be performed, and he estimated the cost of the surgery, including hospitalization, to be at least $1,100.00. He was firm in his conviction that she had a disc injury.
Dr. Charles Rodney Smith, a psychiatrist, examined plaintiff on January 16, 1967, and diagnosed her condition as a “chronic anxiety neurosis” of moderate to severe degree. In his opinion the accident, the injury and the subsequent treatment have “reinforced and aggravated the neurotic condition,” and he feels that psychiatric treatments should be administered to prevent more severe disabling depressive symptoms.
In connection with the treatment which was administered for the injury, Mrs. Richardson was confined to the hospital for three days on one occasion and for eight or nine days on another. She wore a cervical *414 collar for four or five weeks, and she has used a device for applying traction to her neck in her home.
Plaintiffs argue that Mrs. Richardson had a “cervical disc lesion superimposed upon a cervical disc strain associated with chronic emotional disturbance aggravated by the accident and subsequent pain and suffering, all of which requires that she undergo surgery and psychotherapy.” On that assumption they contend that the award of $6,000.00 as general damage to this plaintiff is inadequate. Defendant contends that the injury sustained by Mrs. Richardson amounted to nothing more than a “moderate whiplash injury,” and that the award made for that injury by the trial'court is excessive.
The trial judge or jury is vested with much discretion in the awarding of general damages for personal injuries, and the award made for such damages by the judge or jury will not be disturbed on appellate review unless it is clearly inadequate or excessive. Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); and Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
In the instant suit we think there is substantial evidence which, if accepted by the jury, will support the award of general damages which was made to Mrs. Richardson. We cannot say that the award is clearly inadequate or excessive, and we find no abuse of the discretion which was vested in the jury or the trial judge in fixing the amount of that award.
Defendant argues, however, that the verdict of the jury should be ignored and the award of general damages should be reduced because of two errors made by the trial court which it contends were prejudicial to defendant. First, it contends that the trial judge erred in admitting the depositions of Dr. Llewellyn and of Dr. Smith over objections of the defendant. The record shows that on February 2, 1967, the trial judge wrote to all counsel advising that a pre-trial conference would be held on February 7 and that “all depositions, to be used as evidence by the plaintiff, must be taken prior to the date of the pre-trial conference.” The depositions of these two doctors were taken after the date scheduled for that pre-trial conference but before the date of the trial, and the defendant was represented by counsel at the taking of those depositions. Upon application of defendant a rule was issued directing plaintiffs to show cause why the depositions should not be taken or the trial continued, and that rule was summarily dismissed by the trial judge. Defendant applied to this court for writs, but the application was denied. When the depositions were offered in evidence at the trial defendant objected on the same grounds as had been urged previously. The objection was overruled, however, and the depositions were admitted. The trial judge is and must be vested with much discretion in determining when depositions are to be taken and in regulating the conduct of trials before him. We find no abuse of discretion on the part of the trial court in permitting the depositions to be taken and introduced in evidence in these proceedings.
The second ground urged by defendant for reducing the award of general damages is that the trial judge erred in submitting to the jury a form of verdict which suggested that an award should be made for each item of damage claimed by plaintiffs. The form of verdict which was submitted to the jury listed six items of damages which may be awarded to Mr. Richardson. These included such items as past medical expenses, future medical expenses, automobile damage, maid service, and others, and a blank was left opposite each such item so that a figure could be inserted. Only one item and one blank was shown on the form insofar as it related to an award to Mrs. Richardson. The record shows that the trial judge specifically instructed the jury that in setting forth in this form of verdict the items of damages *415 which might be awarded he did not mean to imply that these items of damages had been proved, and that the jury was not to allow any such item unless it had been proved by a preponderance of. the evidence. The in-instructions given to the jury by the trial judge were clear, and we do not feel that defendant was prejudiced by the form of the verdict. We, therefore, find no merit to the argument of defendant that the award should be reduced because of the form of verdict which was used.
 The jury awarded Mr. Richardson the sum of $1200.00 as past due medical expenses and $550.00 for future medical expenses. As pointed out by defendant, the total of all of the medical expenses which were incurred by plaintiffs for the treatment of Mrs. Richardson’s injuries amounted to the sum of $1104.54. Defendant is entitled, therefore, to have the award made to Mr. Richardson for past medical expenses reduced by the sum of $95.46. There is sufficient evidence to support the award which was made for future medical expenses.
The jury also awarded Mr. Richardson $1500.00 for loss of his wife’s past earnings and $350.00 for the loss of her future earnings. Defendant complains that the award for past earnings is grossly excessive and should be reduced, and that no award at all for loss of future earnings can be justified by the evidence.
Mrs. Richardson testified that she was unable to operate her beauty shop for a period of from four to six months after the accident occurred, and that when she resumed the operation of her shop she was able to work only three days per week. She also testified that because of her injuries she was not able to give shampoos, which we assume is a substantial part of the work of operating a beauty shop. She introduced in evidence a portion of the ledger book in which she kept her accounts, and the entries in that book indicate that her gross earnings for a period of approximately six months before the accident ranged from $141.00 to $309.00 per month. She expended a substantial sum of money in October, 1965, when she first opened her beauty shop, but after that time it appears that her expenses did not exceed $23.30 per month. We agree with defendant that the evidence does not show precisely the earnings which Mrs. Richardson has lost because of her injury or the amount which she will lose in the future.
In matters such as this, where the plaintiff obviously has sustained some loss of earnings but there is considerable variance in estimates as to the amount of such loss, and where a precise calculation of such damages is difficult or impossible, much discretion is accorded to the trier of fact in fixing the amount of damages. Davis v. Roberts, 194 So.2d 772 (La.App. 1st Cir. 1967); Fish v. Martin, 201 So.2d 341 (La.App. 3d Cir. 1967); Nickens v. McGehee, 184 So.2d 271 (La.App. 1st Cir. 1966, Writ refused).
In the instant suit the award made to Mr. Richardson for loss of his wife’s earnings, past and future, cannot be accurately calculated. We think sufficient evidence was presented, however, to justify the awards which were made for these items of damages, and we conclude that the jury did not abuse its discretion in determining the amount of these awards.
For the reasons herein set out the judgment appealed from is amended to reduce the amoünt awarded to Mr. C. W. Richardson from $4350.00 to the sum of $4254.54. The judgement is affirmed in all other respects, and it particularly is affirmed insofar as it awards to Mrs. C. W. Richardson the sum of $6000.00. The costs of this appeal are assessed to plaintiffs-appellants.
Amended and affirmed.