Lisa LEPIC, By and Through her parents and next friends, Steve and Alicia LEPIC; Steve Lepic, individually; and Alicia Lepic, individually, Appellants,

v.

**IOWA MUTUAL INSURANCE COMPANY, Appellee.**

Brian SULLIVAN, Loren Sullivan and Lorna Sullivan, Appellees,

v.

Burton R. CASHNER and Robert B. Cashner, Appellees,

Iowa American Insurance Company, Appellant.

No. 86–161.

Supreme Court of Iowa.

March 18, 1987.

J. Hobart Darbyshire, of Carlin, Hellstrom & Bittner, Davenport, for appellant Iowa American Ins. Co. and appellee Iowa Mut. Ins. Co.

John L. Riccolo and Diane B. Gould, of Wenzel, Piersall & Riccolo, P.C., Cedar Rapids, for appellees Sullivan.

David L. Riley, of Lindeman & Yagla, Waterloo, for appellees Cashner.

Considered by HARRIS, P.J., and McGIVERIN, WOLLE, LAVORATO and NEUMAN, JJ.

McGIVERIN, Justice.

The issue before us in these consolidated appeals is whether the limit of liability as to "each person" in the underinsured motorist or bodily injury liability coverages of certain automobile insurance policies applies to each person sustaining bodily injury and all claims arising therefrom or, instead, applies to each person claiming damages as a result of a bodily injury sustained by a covered person. We conclude the "each person" liability limit in these policies caps recovery for all claims arising from one bodily injury, including therein recovery of loss of consortium damages.

I. *Background facts and proceedings.* In each of these two consolidated appeals, a minor was injured in unrelated one-vehicle automobile accidents. Lisa Lepic was a passenger in an underinsured vehicle and Brian Sullivan was a passenger in a car driven by Robert Cashner and owned by his father, Burton Cashner.

Lepic sought to recover for bodily injuries and her parents, under Iowa Rule of Civil Procedure 8, sought to recover for medical expenses and loss of consortium under the underinsured motorist coverage of the Iowa Mutual Insurance Company policy on the parents' automobile.

Sullivan and his parents sought to recover similar damages under the bodily injury liability coverage of Cashners' automobile insurance policy with Iowa American Insurance Company and from the Cashners personally.

Marc B. Moen and Ross G. Hauser, of Rate, Nolan, Bohanan, Moen & Lucas, Iowa City, for appellants Lepic.

The relevant language in Lepics' policy states:

We [Iowa Mutual Insurance Co.] will pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:

1. Sustained by a covered person; and

2. Caused by an accident.

. . . .

"Covered person" as used in this endorsement means:

1. You or any family member.

. . . .

The limit of liability shown in the Schedule or in the Declarations for "each person" for Underinsured Motorists Coverage is our maximum limit of liability *for all damages for bodily injury sustained by any one person in any one accident.* Subject to this limit for "each person," the limit of liability shown in the Schedule or in the Declarations for "each accident" for Underinsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident. This is the most we will pay regardless of the number of:

1. Covered persons; [or]

2. Claims made;

. . . .

(Emphasis added.) The declarations page of Lepics' policy stated that they had underinsured motorist coverage limits of "$100,000 each person/$300,000 each accident." [1]

Lepics filed a petition for declaratory judgment in Johnson county against Iowa Mutual as to the applicable liability limit. Both Lepics and Iowa Mutual moved for summary judgment in their favor. The district court granted Iowa Mutual's motion, ruling that there was no ambiguity in the policy language and that collectively Lepics were limited to $100,000 coverage under the insurance policy for Lisa's bodily injury.

In a similar proceeding, Sullivans filed a declaratory judgment action in Buchanan county naming Cashners and Iowa American Insurance Company, Cashners' insurer, as defendants. Iowa American and Sullivans moved for summary judgment in their favor. Sullivans' motion was granted by the district court which held that the parents' claims were not to be considered with Brian's claim when applying the "each person" liability limit under the policy.

Thus, the two district courts reached opposite conclusions on the principal issue which all parties treat as determinative of both cases.

Lepics appealed in their case from an adverse ruling. Iowa American Insurance Company appealed from the ruling in the Sullivan case.

On the motion of defendant insurance companies, we consolidated these appeals. Our review of these cases is for correction of errors at law. Iowa R.App.P. 4.

Because the operative language in the two insurance policies and the claims and

---

**1.** The Cashner policy under which Sullivans seek to recover provides in pertinent part:

We [Iowa American Insurance Co.] will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.

. . . .

"Covered person" as used in this Part means:

1. You or any family member for the ownership, maintenance or use of any auto or trailer.

. . . .

The limit of liability shown in the Schedule or in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability *for all damages for bodily injury sus-*

*tained by any one person in any one auto accident.* Subject to this limit for "each person," the limit of liability shown in the Schedule or in the Declarations for "each accident" for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.... This is the most we will pay regardless of the number of:

1. Covered persons; [or]

2. Claims made;

. . . .

(Emphasis added.) The policy limits for bodily injury liability coverage listed on the declarations page of the Cashner policy are "$100,000 each person/$300,000 each accident."

contentions of both sets of plaintiffs and the Cashners are essentially identical, for simplicity purposes our discussion will regard Lepics as the only plaintiffs and insureds.

The operative language in the policies that we are called upon to interpret is the phrase "all damages for bodily injury sustained by any one person in any one accident."

■ II. *Reasonable expectations doctrine.* Lepics initially argue that we must consider their reasonable expectations in interpreting the policy, regardless of whether we conclude the policy language is ambiguous. The doctrine of reasonable expectations is applicable when: a policy term is bizarre or oppressive; it "eviscerates the nonstandard terms explicitly agreed to"; or "it eliminates the dominant purpose of the transaction." *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.,* 227 N.W.2d 169, 176 (Iowa 1975) (quoting Restatement (Second) of Contracts § 237 comment f (student ed. 1973)). In interpreting the language, we determine "whether an ordinary layman could reasonably expect coverage." *Farm Bureau Mut. Ins. Co. v. Sandbulte,* 302 N.W.2d 104, 113 (Iowa 1981).

The insurer [2] argues that Lepics have not established a factual background, pursuant to *C & J Fertilizer,* warranting application of the reasonable expectations doctrine. It states there is no dispute as to coverage under the policy; the dispute revolves around the applicable limit of liability.

Without unduly extending this opinion, we would note that the factors considered in *C & J Fertilizer* and *Sandbulte* are not present here. The policy language is not bizarre or oppressive, nor does it eliminate the dominant purpose of the coverage or eviscerate any terms to which the parties agreed. *See Cairns v. Grinnell Mut. Reinsurance Co.,* 398 N.W.2d 821, 825 (Iowa 1987); *Sandbulte,* 302 N.W.2d at 114. We conclude that the necessity for application

of the reasonable expectations doctrine has not been shown by Lepics.

Based on these conclusions, we need not look to Lepics' intent or expectation in entering into the automobile insurance policy. We look only to the language of the policy.

III. *Limit of liability.* Lepics argue the "each person" limitation of liability provision is ambiguous because it is susceptible to at least two meanings. The insurer argues, and we have previously stated, that "the mere fact that parties disagree on the meaning of a phrase does not establish ambiguity" warranting an interpretation favorable to the insured. *Sandbulte,* 302 N.W.2d at 108. We must determine objectively if the language is "fairly susceptible" to two interpretations. *Id.* If we determine the language is unambiguous, we turn to the terms of the policy as an expression of the parties' intent. *Bertran v. Glens Falls Ins. Co.,* 232 N.W.2d 527, 530 (Iowa 1975); Iowa R.App.P. 14(f)(14).

■ A. *"Sustained by any one person" and what it modifies.* One of the arguments raised by Lepics is that the phrase "sustained by any one person" in the policy modifies the term "all damages" rather than the phrase "for bodily injury"; the phrase "for bodily injury" merely modifies the term "damages" as well. By this argument Lepics contend that each person damaged as a result of a bodily injury to any person is covered up to $100,000 per person, subject to a $300,000 per accident liability limit. Thus, the parents would be entitled to recover up to $100,000 each for loss of consortium with Lisa and medical expenses incurred on her behalf, in addition to Lisa's claim for up to $100,000. A similar recovery would occur in the Sullivan case.

The insurer argues that there is no ambiguity in the policy language. It further urges this court to give the words "all damages for bodily injury sustained by any one person" their plain meaning, limiting liability under the policies to $100,000 for

**2.** For ease of reference, we will refer to Iowa Mutual Insurance Company and Iowa American Insurance Company as the insurer.

all damages arising out of bodily injury to one person.

Numerous courts have ruled on phrases similar to the one before us and uniformly they have rejected the Lepics' argument that the words of the policy should be reordered to create an ambiguity. In fact, the courts have specifically held that the policy language should be given effect as written, not moving the phrase "sustained by any one person" to modify language earlier in the limitation provision, such as "all damages." *See State Farm Mut. Auto. Ins. Co. v. Hodges,* 221 Ga. 355, 357, 144 S.E.2d 723, 724–25 (1965) (wife's loss of consortium claim limited); *Dunn v. Travelers Ins. Co.,* 6 Mass.App.Ct. 910, 910–11, 378 N.E.2d 1007, 1008 (1978) (same); *Holtz v. Mutual Serv. Casualty Co.,* 264 Minn. 121, 123, 117 N.W.2d 767, 769 (1962) (husband limited in amount he could recover for wife's medical expenses); *Bernat v. Socke,* 180 Pa.Super. 512, 515–16, 118 A.2d 253, 254 (1955) (limited husband's loss of consortium claim); *Ryan v. Friede,* 18 Wis.2d 138, 142, 118 N.W.2d 208, 210 (1962).

In *Cairns v. Grinnell Mutual Reinsurance Co.,* 398 N.W.2d 821, 824–25 (Iowa 1987), we applied a doctrine of statutory construction in aid of our interpretation of insurance contract language. We stated, "In exploring statutory intent, we have consistently reasoned that qualifying words and phrases ordinarily refer only to the immediately preceding antecedent. We apply a similar analysis here." *Id.* (citations omitted). In applying the rule giving meaning to qualifying words, we give the words meaning in light of the contract as a whole rather than as limited phrases or clauses. *Id.* Under this rule the qualifying words "sustained by any one person" would modify the immediately preceding phrase "for bodily injury."

"When interpreting a contract, we seek to give effect to the language of the entire contract in accordance with its commonly accepted and ordinary meaning." *Home Fed. Sav. & Loan Ass'n v. Campney,* 357 N.W.2d 613, 617 (Iowa 1984). It is well established, by the authorities cited above, that the commonly accepted and ordinary meaning of the "each person" limit of liability is that the phrase "sustained by any one person" modifies the phrase "for bodily injury" rather than the term "damages."[3]

We conclude that the insurer's interpretation of the policy language is reasonable in light of the weight of authorities. The policy language should be reviewed in its written syntax.

■ B. *Loss of consortium as a separate bodily injury.* Lepics ask us to follow one of the California appellate courts by recognizing that loss of consortium constitutes a separate bodily injury for purposes of an auto insurance liability limit. *See Abellon v. Hartford Ins. Co.,* 167 Cal. App.3d 21, 212 Cal.Rptr. 852 (1985) (fourth court of appeals). The California court held that loss of consortium can cause actual physical injury to the wife suffering loss of her husband's consortium; thereby the wife suffers a compensable "bodily injury." *Id.* at 26–29, 212 Cal.Rptr. at 855–57.

The insurer, however, cites another California appellate court holding the opposite of *Abellon. State Farm Mut. Auto. Ins. Co. v. Ball,* 127 Cal.App.3d 568, 572, 179 Cal.Rptr. 644, 646 (1981). In *Ball,* the second court of appeals held that loss of consortium is not a "bodily injury" to the deprived spouse. *Id.* The insurer also points out all other authorities state that loss of consortium is not a separate bodily injury for purposes of the policy liability limit. *See Arguello v. State Farm Mut. Auto. Ins. Co.,* 42 Colo.App. 372, 375, 599 P.2d 266, 268–69 (1979); *Travelers Indem. Co. v. Cornelson,* 272 Md. 48, 51, 321 A.2d 149, 150 (1974); *Auto Club Ins. Ass'n v. Lanyon,* 142 Mich.App. 108, 112, 369 N.W.2d 269, 271–72 (1985); *State Farm*

---

**3.** Lepics contest this proposition by the filing of an affidavit of an English professor with their motion for summary judgment. In view of the undisputed authority, we conclude that the professor's affidavit does not create an ambiguity regarding the order of the words that we are called upon to interpret.

*Mut. Auto. Ins. Co. v. Acosta,* 479 So.2d 1089, 1090–91 (Miss.1985); *New Hampshire Ins. Co. v. Bisson,* 449 A.2d 1226, 1227 (N.H.1982); *Hutton v. Martin,* 43 Wash. 574, 577, 262 P.2d 202, 204 (1953); *Thompson v. Grange Ins. Ass'n,* 34 Wash. App. 151, 161–62, 660 P.2d 307, 313 (1983).

We have previously recognized that loss of consortium is a personal injury to the spouse or parent deprived of his or her spouse's or child's consortium. *See Madison v. Colby,* 348 N.W.2d 202, 207 (Iowa 1984) (Recovery of loss of consortium damages goes to spouse who suffered the loss.); *Handeland v. Brown,* 216 N.W.2d 574, 576 (Iowa 1974) ("A rule [of civil procedure] 8 claim is brought by a parent to redress a wrong done to himself rather than another."). We, however, are not willing to extend this line of reasoning to declare that loss of consortium is a *bodily* injury to the deprived spouse or parent.

■ C. *All damages for bodily injury.* A final argument raised by Lepics is that there is an ambiguity in the limitation of liability provision. In *Abellon,* the court stated that since the limit of liability did not specify loss of consortium damages as within "all damages" there was an ambiguity in the policy. 167 Cal.App.3d at 31, 212 Cal.Rptr. at 858 (Policy covered "all damages resulting from bodily injury caused by any one accident." Ambiguity existed if loss of consortium constituted a "bodily injury" because it then could be separately compensable, or a "damage resulting from bodily injury" to the person actually in the car accident, thus subject to the "each person" limit of liability.) Lepics challenge the absence of an elaboration of what is included in "all damages" under the policies. They say the omission of a list of included damages, as can be found in numerous policies, renders the provision ambiguous. The absence of elaboration, however, was not determinative in *Abellon.* *Contra Cano v. Travelers Ins. Co.,* 656 S.W.2d 266 (Mo.1983).

The insurer cites numerous cases that have found policy language similar to that involved here to be unambiguous. The insurer argues that the word "all" is inclusive; thus, any damage that can be suffered by any individual as a result of bodily injury to one person is covered by the phrase "all damages."

Lepics primarily rely on *Bilodeau v. Lumbermens Mutual Casualty Co.,* 392 Mass. 537, 467 N.E.2d 137 (1984), for their argument that an ambiguity exists in the policy language. The following limit of liability was found in the policy: "The most we [Lumbermens Mutual] will pay for *injuries* to any one person as a result of any one accident is [$10,000]." *Id.* at 540, 467 N.E.2d at 139 (emphasis added). This case is readily distinguishable from the present case. First, the *Bilodeau* policy requires only an injury. As we indicated in subdivision III(B), we recognize that loss of consortium is not a bodily injury but does constitute a personal injury. The policy's failure to require a bodily injury in *Bilodeau,* in contrast with that requirement here, rendered the *Bilodeau* policy language ambiguous. Also, the policy differed from the one at issue here in that it did not state it would cover "all damages." Therefore, we do not find *Bilodeau* persuasive on the issue of whether there is an ambiguity in Lepics' policy.

"When words are not defined in the policy, we give them their ordinary meaning." *North Star Mut. Ins. Co. v. Holty,* 402 N.W.2d 452, 455 (Iowa 1987); *IMT Insurance Co. v. Amundsen,* 376 N.W.2d 105, 107 (Iowa 1985). "All" is defined as "every." Webster's Third New International Dictionary 54 (1976). "Damages" means "compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right," Webster's Third New International Dictionary 571, or "sum of money awarded to a person injured by the tort of another," Black's Law Dictionary 352 (5th ed. 1979). The combination of these terms would clearly include loss of consortium damages.

The recovery of loss of consortium damages together with all other direct or consequential damages under the liability coverage of an auto insurance policy has been

limited to the amount of coverage for the bodily injury to one person by the vast majority of courts. In *Gass v. Carducci*, 52 Ill.App.2d 394, 202 N.E.2d 73 (1964), an injured woman's husband claimed damages for loss of services and consortium. The insurance company denied liability for his damages because the applicable limit of liability had been exhausted by his wife's claim. *Id.* at 402–03, 202 N.E.2d at 76–77. The court held the "each person" limit of liability applied to "all damages sustained by all persons as the result of injury to one person" and "rejected the contention that the 'one person' limit merely deals with the loss suffered by any one person." *Id.* at 402, 202 N.E.2d at 77. The policy defined damages as including "damages for care and loss of services."

A similar judgment was rendered in *Moore v. State Farm Mutual Insurance Co.*, 710 S.W.2d 225 (Ky.1986). The policy covered "all damages arising out of bodily injury sustained by one person in any one accident" while defining "damages" as including "damages for care and loss of services." *Id.* at 226. The court quoted a legal commentary which states:

> Under policies fixing a maximum recovery for 'bodily' injury to one person, ... the limitation [is] applicable to all claims of damage flowing from such bodily injury, and that therefore it is immaterial that some part of the damages may be claimed by a person other than the one suffering the bodily injuries. In other words, all damage claims, direct and consequential, resulting from injury to one person, are subject to the limitation.

*Id.* (quoting Annotation, *Construction and Application of Provision in Liability Policy Limiting the Amount of Insurer's Liability to One Person*, 13 A.L.R.3d 1228, 1234 (1967)). The court stated that the limit of liability had already been paid on Mr. Moore's claim. His wife's loss of consortium claim exceeded the company's liability; thus, she was precluded from recovery under the policy. *Id.*

*Williams v. State Farm Mutual Automobile Insurance Co.*, 99 N.J.Super. 377,

240 A.2d 38 (1968), *aff'd*, 54 N.J. 580, 258 A.2d 368 (1969) (per curiam), involved a husband's claim for medical expenses and loss of his wife's services. The insurance policy limited its coverage to "$25,000 for all damages arising out of bodily injury sustained by one person in any one accident," and defined "damages" as including "damages for care and loss of service." 99 N.J.Super. at 379, 240 A.2d at 39. The court concluded, "The $25,000 limit provided by the policy is not a limit upon the amount which may be received by one person. It is a *limit on* the *total amount* which may be *recovered for injury to one person.*" *Id.* (emphasis added). The husband's loss of consortium claim was deemed consequential to the wife's bodily injury for purposes of recovery under the insurance policy. *Id.*

A similar result was reached in *Fish v. Martin*, 201 So.2d 341 (La.Ct.App.1967). In addition to seeking recovery for medical expenses incurred by his wife, Mr. Fish claimed damages for loss of consortium with his wife due to her bodily injury. The court clearly pointed out,

> although two persons may suffer recoverable damages as a result of one person's bodily injury, the applicable policy limit is the lesser amount stated as applicable to the recovery of damages arising out of "one person's" bodily injury rather than the greater amount provided as applicable for the maximum bodily injury liability resulting from any "one accident."

*Id.* at 344. Thus, the court held parental or spousal recovery for consequential damages, such as loss of consortium, is included in the "one person" limitation.

A recent Wyoming case also declared the applicable limit of liability when loss of consortium damages are sought under an auto insurance policy. *Arnold v. Mountain W. Farm Bureau Mut. Ins. Co.*, 707 P.2d 161 (Wyo.1985). The liability limit in the policy stated it was "for all damages ... for care and loss of services, arising out of bodily injury sustained by one person in any one accident." *Id.* at 166. The

court held that a husband's claim for loss of consortium is derivative from the bodily injury for which coverage is claimed. "All damages arising out of bodily injury sustained by one person are lumped together for purposes of the liability limit," the court stated. *Id.*

The most persuasive authority on the contract language at issue here is *Mackoul v. Fidelity & Casualty Co.*, 402 So.2d 1259 (Fla.Dist.Ct.App.1981). The case involved claims by the father, the mother and the estate of a child killed in a car accident. The applicable limit of liability for uninsured motorist coverage was $100,000 "for all damages for bodily injury sustained by any one person in any one auto accident.... This is the most [the insurer] will pay regardless of the number of covered persons [or] claims made...." *Id.* at 1260. This is identical to the language in the policies of Lepics and Cashners. The Florida court held, "The policy provisions clearly limit the total liability for all damages that can be recovered by all parties for the bodily injury to one person to $100,-000." *Id.* The court went on to state, "The limits of liability under the policy are not affected by the number of causes of action that might accrue from the bodily injury of a single person." *Id.*

A number of courts have reached the same result as the Florida, Illinois, Kentucky, Louisiana, New Jersey and Wyoming courts on the applicable limit of liability on similar policy language when a parental or spousal loss of consortium claim is raised in addition to the claim of the person who was bodily injured. *Smith v. State Farm Mut. Auto. Ins. Co.*, 252 Ark. 57, 58, 477 S.W.2d 186, 187 (1972); *Faber v. Roelofs*, 311 Minn. 428, 438–40, 250 N.W.2d 817, 823–25 (1977); *New Hampshire Ins. Co. v. Bisson*, 122 N.H. 747, 449 A.2d 1226, 1227 (N.H.1982); *Greenberg v. Medi-Cab Inc.*, 114 Misc.2d 104, 107–08, 451 N.Y.S.2d 335, 337–38 (Sup.Ct.1982); *Smith v. Cassida*, 403 Pa. 404, 406–08, 169 A.2d 539, 540–41 (1961). These courts uniformly have held the policy language unambiguous; thus, the joint recovery of the deprived claimant and the individual who sus-

tained the bodily injury is limited to the "each person" limit of liability specified in the policy.

The clear language of Lepics' and Cashners' policies limits the insurer's liability for covered damages to $100,000 for *all* damages all persons suffer as a result of a bodily injury to one person. Thus, under the policies, the parents' loss of consortium claims must be lumped with their children's claims in determining if the "each person" limit of liability has been exhausted. This conclusion governs the recovery of these damages only under the insurance policies and does not affect the claims of Loren and Lorna Sullivan against the Cashners personally.

IV. *Disposition.* In summary, we affirm the decision of the district court for Johnson county in the Lepic case and reverse the judgment of the district court for Buchanan county in the Sullivan action.

LEPIC CASE APPEAL AFFIRMED; SULLIVAN CASE APPEAL REVERSED.